United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 28, 2005**

Charles R. Fulbruge III
Clerk

REVISED MAY 3, 2005

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 03-11092
_____

DONALD E. ARMSTRONG, as Trustee of the Donald E. Armstrong Family
Trust and the Donald E. Armstrong Charitable Remainder Unitrust,

Plaintiff - Appellant,

DONALD E. ARMSTRONG, Post-Bankruptcy Petition as a Post-
Bankruptcy Petition Beneficiary of the Donald E. Armstrong Family
Trust and the Donald E. Armstrong Charitable Remainder Unitrust,

Intervenor Plaintiff – Appellant,

v.

CAPSHAW, GOSS & BOWERS, LLP,

Defendant – Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas, Dallas

_____

Before REAVLEY, JOLLY, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Donald E. Armstrong intervened in this legal malpractice
action while it was administratively closed in state court.
After removing the case to federal court, Armstrong moved to
amend his complaint in intervention. The district court denied
the motion, holding that Armstrong did not meet the federal
standards for intervention of right. We AFFIRM.

I.    BACKGROUND

1

The proceedings leading up to, and concomitant with, this legal malpractice action are numerous and varied. As noted by a Bankruptcy Appellate Panel of the Tenth Circuit, "Appellant is a familiar and frequent litigant in . . . the Texas, Utah, and Georgia state courts, the federal courts sitting in Utah, the United States Court of Appeals for the Tenth Circuit [], and the United States Supreme Court." *Armstrong v. Rushton*, 303 B.R. 213, 214-15 (B.A.P. 10th Cir. 2004). We limit the following discussion to the facts and procedural history pertinent to this appeal.

Armstrong was the settlor, trustee, and beneficiary of two trusts: the Donald E. Armstrong Family Trust, which he created in 1983; and the Donald E. Armstrong Charitable Remainder Unitrust, which he created in 1994 (collectively, the "Trusts"). In 1994, Armstrong sold an apartment complex in Texas to Steppes Apartments, Ltd. ("Steppes") on behalf of the Trusts. A dispute arose when Steppes allegedly failed to make payments on two promissory notes it had executed in financing the transaction. When the Trusts sent Steppes a notice of default, Steppes sued Armstrong, as trustee, in Texas state court, seeking a declaration that it was not in default on the notes. Armstrong hired Appellee, the law firm Capshaw, Goss and Bowers, L.L.P. ("Capshaw Goss"), to represent him in the ensuing litigation.

Armstrong fared disastrously in the Steppes case. By the

close of litigation, the parties had been through three different judges, and Steppes had added and prevailed on a usury claim against the Trusts for approximately $1,300,000.00. The court ultimately entered a modified judgment in favor of Steppes ("Steppes Judgment").

In May 1997, after his loss in the Steppes case, Armstrong, as trustee, filed this legal malpractice action against Capshaw Goss in Texas state court. The case was abated shortly thereafter, however, because Armstrong's appeal of the Steppes Judgment was pending.[1]

In 1999, Armstrong obtained judgments against himself, in his capacity as trustee, in Utah state court ("Trust Judgments"). The Trust Judgments transferred all of the Trusts' assets and property, including rights in any litigation, to Armstrong, individually. That same year, Armstrong dissolved the Trusts pursuant to their terms.

Armstrong next filed a *pro se* petition for Chapter 11 bankruptcy in Utah on March 20, 2000, while the instant action between the Trusts and Capshaw Goss was still pending. The bankruptcy court appointed Kenneth Rushton as bankruptcy trustee and confirmed Rushton's second plan of reorganization on January 31, 2002 ("Confirmation Order"). In the Confirmation Order, the

---

[1]Armstrong was unsuccessful on appeal. *See Armstrong v. Steppes Apartments, Ltd.*, 57 S.W.3d 37 (Tex. App.——Fort Worth 2001, pet. denied), *cert. denied*, 536 U.S. 951 (2002).

bankruptcy court found that, pursuant to the Trust Judgments, Armstrong had acquired all of the Trusts' property and rights in litigation, including this lawsuit against Capshaw Goss. Hence, the court found that all of the assets and interests that formerly belonged to the Trusts were now the property of the bankruptcy estate and controlled by Rushton. Based on Armstrong's history of litigiousness and repeated refusals to comply with the bankruptcy court's orders, the bankruptcy court enjoined Armstrong from pursuing or engaging in any litigation that would interfere with the Confirmation Order.

Rushton stepped in for Armstrong and the Trusts in the abated Texas action against Capshaw Goss and initiated settlement negotiations. In February 2002, however, Armstrong intervened in the case, asserting that he had acquired postbankruptcy petition interests in the action. Armstrong then filed a notice of removal based on federal question and diversity jurisdiction. The lawsuit was removed to the United States District Court for the Northern District of Texas.

Once in federal court, Capshaw Goss and Rushton objected to Armstrong's intervention.[2] They asserted that Armstrong had intervened in the closed state-court case based on rights that belonged to the bankruptcy estate. Capshaw Goss argued, among

---

[2]These arguments were contained in the joint status report filed by the parties, at the direction of the district court, on September 23, 2002.

4

other things, that Armstrong's complaint in intervention was insufficient under federal procedural standards. In response, Armstrong moved to amend his complaint in intervention, which he had originally filed in state court, to cure "any differences" between the state and federal intervention requirements.

The district court denied Armstrong's motion to amend his complaint in intervention. In so doing, the court treated the motion to amend as a motion for leave to intervene under Federal Rule of Civil Procedure 24(a)(2) and found that Armstrong did not meet the federal requirements for intervention. Specifically, the court stated that Armstrong lacked the requisite interest in the action since all of the property formerly belonging to the Trusts was now part of the bankruptcy estate. The court then administratively closed the case pending settlement negotiations.

Capshaw Goss and Rushton settled the malpractice claims on May 1, 2003,[3] and the district court dismissed the malpractice lawsuit with prejudice on September 19, 2003. Armstrong timely appealed to this court.

## II. Analysis

Armstrong raises several issues on appeal, most of which are

---

[3]This settlement was later affirmed by an appellate bankruptcy panel of the Tenth Circuit. *See Armstrong v. Rushton*, Nos. UT-03-059 and 00-26592, 2004 WL 1040693 (B.A.P. 10th Cir., May 6, 2004).

not properly before this court.[4]  The only issue raised by Armstrong that we may review is whether the district court erred in refusing to allow him to remain as an intervenor in the removed action.

Armstrong initially disputes the district court's treatment of his motion for leave to amend his complaint in intervention as a motion for leave to intervene.  We have frequently instructed district courts to determine the true nature of a pleading by its substance, not its label.  *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (en banc) ("[W]e have oft stated that 'the relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label'") (quoting *Bros. Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 606 (5th Cir. 1963)).  Because Armstrong's motion to amend his complaint sought to justify his status as an intervenor in federal court, the district court properly treated it as a motion for leave to intervene.  We will likewise construe the district

---

[4]In these extraneous issues, which seemingly arise from Armstrong's perception that the courts have treated him unfairly, Armstrong challenges on numerous grounds the validity of the Utah bankruptcy court's orders, the Utah state court's Trust Judgments, and the Steppes Judgment.  These challenges are improper either because they constitute impermissible collateral attacks on valid judgments, or because we lack jurisdiction to review the underlying judgments.  *See* 28 U.S.C. § 1294(a)(1993) ("[A]ppeals from reviewable decisions of the district or territorial courts shall be taken to the courts of appeals as follows: (1) From a district court of the United States to the court of appeals for circuit embracing the district[.]").

court's order denying that motion as a denial of a motion for leave to intervene.

In further support of his proposed intervention, Armstrong argues that he was entitled to remain as an intervenor in federal court because (1) he had already properly intervened in the state court action, and (2) he met the procedural requirements for intervention of right under Federal Rule of Civil Procedure 24(a)(2).

We agree with Armstrong's assertion that his intervention in the Texas state court action was procedurally correct. Intervention is relatively easy under Texas law. Texas procedural rules allow "[a]ny party [to] intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX. R. CIV. P. 60. Thus, in Texas state court, anyone is permitted to intervene unless another party objects and the court agrees with that objection. Because no party objected in the state court here, Armstrong was designated as an intervenor and then allowed to remove the case to federal court.

Once Armstrong removed the lawsuit from state court, however, the action was governed by federal, rather than state, procedural rules. *Azzopardi v. Ocean Drilling & Exploration Co.*, 742 F.2d 890, 895 (5th Cir. 1984). Armstrong was therefore required to meet federal intervention standards to remain as an

intervenor in the removed case.[5] *Id.; see also Bank One, Tex., Nat'l Assoc. v. Elms*, 764 F. Supp. 85, 88 (N.D. Tex. 1991) ("In determining whether [an] intervention should be stricken or dismissed, the court will be guided by federal law."). Accordingly, the district court did not err in reviewing the propriety of Armstrong's status as an intervenor under the federal requirements for intervention.

We turn next to the district court's conclusion that Armstrong could not intervene of right under the federal rules. We review the denial of a motion to intervene of right de novo. *Edwards*, 78 F.3d at 995.

To intervene of right under Federal Rule of Civil Procedure 24(a)(2),[6] an applicant must meet the following requirements:

> (1) the application for intervention must be timely;
> (2) *the applicant must have an interest relating to the*

_____

[5]Notably, Armstrong implicitly acknowledged that he was bound by federal law in his motion for leave to amend his complaint in intervention, in which he argued that he was entitled to intervene of right under Federal Rule of Civil Procedure 24(a).

[6]Rule 24(a)(2) provides:
> (a) Intervention of Right. Upon timely application any one shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

FED. R. CIV. P. 24(a)(2).

*property or transaction which is the subject of the action*; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Id.* at 999 (emphasis added). The district court held that Armstrong could not intervene under Rule 24(a)(2) because he no longer possessed any interest, either individually or as trustee, in the claims against Capshaw Goss. The court explained that pursuant to the Confirmation Order, all causes of action formerly belonging to the Trusts, including the malpractice claims asserted here, were now property of the bankruptcy estate and wholly controlled by Rushton.

Armstrong argues, however, that he possesses interests in the malpractice action that are not part of the bankruptcy estate because they arose after he filed for bankruptcy. First, he claims that he has an individual interest in the claims because the Steppes Judgment has continued to affect him since he filed for bankruptcy. Second, Armstrong claims that he has an interest in the claims as the Trusts' beneficiary because he purportedly acquired beneficial remainder interests from the National Ability Center after his bankruptcy filing on March 20, 2000.

Armstrong has no interest in the claims against Capshaw Goss in his individual capacity. Though it is undeniably clear that Armstrong feels he has been, and continues to be, unjustly injured by the Steppes Judgment, the effect of that judgment does

not give rise to any recognizable legal interest in this malpractice action. Any individual claims Armstrong may have had against Capshaw Goss relating to their representation of Armstrong and the Trusts are now part of the bankruptcy estate, as they arose before Armstrong filed for bankruptcy.[7]

Likewise, Armstrong's argument that he may intervene as a beneficiary of the Trusts lacks merit for two reasons. First, though Armstrong asserts that he acquired a remainder interest in the Trusts by purchasing property from the National Ability Center after he filed for bankruptcy, we are unable to discern the nature of these purported interests. Neither Armstrong's briefing nor the record shed light on what these interests might be and whether they were ever property of the Trusts.

Second, Armstrong cannot show that any postpetition interests in the Trusts exist. When he filed his bankruptcy petition, Armstrong had acquired all of the assets of the Trusts, including legal rights in litigation, pursuant to the Trust Judgments. As stated in the Confirmation Order, "any and all

---

[7]In addition, even if Armstrong, individually, could articulate some cause of action against Capshaw Goss, Texas law would prohibit his claims for lack of privity. *See Poth v. Small, Craig & Werkenthin, LLP*, 967 S.W.2d 511, 514 (Tex. App.——Austin 1998) (holding that a trust beneficiary lacks standing to sue an attorney hired by a trustee for malpractice). *But cf. McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999) (holding that trust beneficiaries may sue a lawyer for negligent misrepresentations made to the trust beneficiaries even though no attorney-client relationship exists).

10

rights to pursue, prosecute, settle or otherwise exercise control or dominion over . . . litigation involving the Trusts or derived from rights belonging to the Trusts" became part of the bankruptcy estate when Armstrong filed his Chapter 11 petition on March 20, 2000.  Armstrong has no postpetition interests in the Trusts that support his intervention in this lawsuit.

## III. CONCLUSION

Based on the foregoing analysis, we AFFIRM the district court's judgment.

AFFIRMED.

11