2007 OK 16

Johnny Weldon BROWN and Beth Ann Brown, Plaintiffs/Appellants,

v.

Tejas Sanmukh PATEL, Defendant,

and

Commercial Union Insurance Company, One Beacon Insurance Group, and Employers Fire Insurance Company, Intervenors/Appellees.

No. 102,402.

Supreme Court of Oklahoma.

March 27, 2007.

Joe E. White, Jr., Charles C. Weddle III, White Law Firm, Oklahoma City, OK and William J. Baker, Hert, Baker & Koemel, Stillwater, OK, for Plaintiff/Appellant.

Loyal J. Roach, Steven V. Buckman and Diane M. Black, Buckman and Roach, Tulsa, OK, for Intervenors/Appellees.

EDMONDSON, V.C.J.

¶ 1 The issues in this appeal are (1) whether a UM insurer may, without either denying or granting a UM claim, seek intervention in the action brought by its insured against the alleged tortfeasor and assert both potential subrogation rights and the defenses raised by of the tortfeasor; and (2) whether a subsequent judgment for the tortfeasor necessarily relieves the UM carrier of any bad-faith liability arising from its handling of the UM claim. We hold that a UM insurer may, in certain circumstances, intervene in the action brought by its insured against the alleged tortfeasor and assert certain defenses, and that a subsequent judgment for the tortfeasor does not relieve the insurer of all possible bad-faith claims based upon the insurer's handling of the UM claim.

I.

¶ 2 Brown and Patel were involved in a motor vehicle collision. Brown [1] brought an action against Patel in the District Court and Patel answered. Brown also notified his uninsured motorist carrier, One Beacon Insurance Group (OneBeacon), of his legal action. The uninsured/underinsured motorist coverage in this controversy was also part of a policy providing workers' compensation coverage for Brown.

¶ 3 OneBeacon Insurance Group was granted leave to intervene via two different motions, once in the name of OneBeacon and once in the name of Commercial Union Insurance Company. The first in time, Commercial Union's petition to intervene, was based upon the carrier's status as Brown's UM carrier. Approximately four months later, OneBeacon filed a petition to intervene alleging that it had paid $2,841.45 for Brown's medical expenses as a result of a workers' compensation policy. Brown answered and, while admitting that OneBeacon was his workers' compensation insurance carrier and that he had filed a Form 3 seeking workers' compensation benefits, denied that OneBeacon had paid $2,841.45 for his medical expenses. Commercial Union Insurance Company had previously changed its name to OneBeacon and we treat the intervenors as a single entity, OneBeacon, for the purpose of this opinion.[2]

¶ 4 Brown's allegation of OneBeacon's bad faith centers on one of the petitions to intervene. This petition combined (1) a petition for intervention that adopted allegations from Brown's petition, asserted a potential subrogation interest and sought a determination of the rights of OneBeacon; (2) an answer that denied certain allegations of Brown's petition, adopted Patel's defenses and requested that Brown's petition be dismissed; and (3) a cross-petition that asserted a cross-claim against Patel and requested a judgment against Patel for any amount OneBeacon would be required to pay Brown.[3]

¶ 5 Brown filed an amended petition that added claims against OneBeacon. Brown alleged that (1) OneBeacon was his unin-

1. Beth Ann Brown is listed as a party to the order granting summary adjudication that is before us on appeal. She subsequently filed a dismissal with prejudice in the District Court. The petition in error filed by Johnny Weldon Brown lists himself as the appellant. In the opinion we refer to Brown, or appellant, in the singular.

2. OneBeacon treats both petitions to intervene as filed by itself, although the trial court referred to intervenors in the plural form. The summary judgment briefs, including OneBeacon's, do not distinguish between intervenors for the purpose of the arguments made therein.

3. 12 O.S. § 2013 (G) provides:

G. CROSS–CLAIMS. A pleading may state as a cross-claim any claim by one party against any party who is not an opposing party arising out of the transaction or occurrence that is the subject matter either of the original action or of a claim therein or relating to any property that is the subject matter of the original action. A cross-claim may assert a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

sured/underinsured carrier; (2) in the year 2000, Brown had put the carrier "on notice of the claim for underinsured motorist benefits and medical pay benefits" and (3) his insurer had breached its duty to deal fairly and in good faith.

¶ 6 OneBeacon filed a motion for summary judgment, Brown responded and OneBeacon replied. The motion for summary judgment states that OneBeacon did not commit bad faith because (1) An uninsured/underinsured obligation was never "triggered" because Brown's damages were below Patel's (alleged tortfeasor's) $300,000.00 insurance coverage, (2) OneBeacon's employees reasonably questioned the causation of Brown's claim and (3) OneBeacon's employees reasonably questioned the value of Brown's claim.

¶ 7 Brown responded and stated that One-Beacon did not question the cause of Brown's injuries prior to OneBeacon's intervention. Brown argued that OneBeacon was not sued for bad faith in evaluating the amount of Brown's claims. Instead, he argued that On-eBeacon's conduct showed bad faith when it (1) intervened and asserted a subrogation claim against Patel, and thus adopted Brown's allegation's that his injuries were in excess of $300,000 and (2) asserted a subro-gation interest while "actively defending Pa-tel." Plaintiffs' Brief at p. 22. Brown's com-plaint is that OneBeacon never denied or granted the claim, but sought intervention to assert judicial remedies based upon both granting and denying the claim.

■ ¶ 8 The District Court granted the motion for summary judgment. A verdict was returned for Defendant Patel, judgment entered on that verdict, and then Brown

appealed the summary judgment granted to OneBeacon. This Court retained the appeal. OneBeacon filed motions for oral argument and permission to file appellate briefs in addition to those that were before the trial court.[4] Oral argument and additional briefs would not materially assist the Court, and the motions for oral argument and additional briefing are denied.

## II.

■ ¶ 9 Generally, an implied duty of an insurer to act in good faith and deal fairly with its insured is imposed by law upon the insurer-insured relationship, and a breach of that duty arises from a breach of the insur-ance contract where the breach occurs in a manner constituting a lack of good faith; i.e., constituting bad faith. *Christian v. Ameri-can Home Assurance Company*, 1977 OK 141, 577 P.2d 899, 901–902, 904–905.[5] In our case today, Brown has not included the in-surance contract as part of the record on appeal. Brown does not reference any ex-press language of the insurance contract as the basis for an obligation that has been allegedly breached in a bad-faith manner.

■ ¶ 10 Of course, a part of every con-tract in this state is the law applicable to that contract. *Public Service Co. of Oklahoma v. State ex rel. Oklahoma Corp. Com'n*, 2005 OK 47, ¶ 54, 115 P.3d 861, 884. Contracts of insurance are no exception to this rule, and this Court has recognized the well-known principle that provisions of an insurance con-tract may arise from statute as opposed to the express writing contained in the docu-ment agreed to by the parties.[6] Similarly,

4. The trial court's judgment states that it based its adjudication on Intervenors' Brief in Support of Renewed Supplemental Motions for Partial Summary Judgment (filed November 10, 2003), Plaintiffs' Objection and Renewed Supplemental Response (November 24, 2003), and Intervenors' Reply Brief to Plaintiffs' Response (December 29, 2003).

The summary judgment briefs function as the briefs on appeal unless an appellate court orders otherwise. *Harkrider v. Posey*, 2000 OK 94, n. 50, 24 P.3d 821, 833; *Carswell v. Oklahoma State University*, 1999 OK 102, n. 2, 995 P.2d 1118, 1121; *Simpson v. Farmers Ins. Co., Inc.*, 1999 OK 51, ¶ 3, 981 P.2d 1262, 1264; *Purcell v.*

*Santa Fe Minerals, Inc.*, 1998 OK 45, n. 2, 961 P.2d 188, 190.

5. The phrase "bad faith" is used here as a short-hand reference to a breach of the duty of good faith and fair dealing. *But see, e.g., Timmons v. Royal Globe Ins. Co.*, 1982 OK 97, 653 P.2d 907, 911 (bad faith breach of contract distinguished from breach of covenant of good faith and fair dealing).

6. *See, e.g., Tapp v. Perciful*, 2005 OK 49, ¶ 9, 120 P.3d 480, 482–483 (Court has upheld the public policy embodied by the compulsory liability in-surance statutes when invalidating clauses in in-surance policies that are contrary to the purpose

we recently explained that a bad-faith action could be based upon an insurer's refusal to satisfy statutory obligations imposed upon or resulting from the insurance contract. *Sizemore v. Continental Cas. Co.*, 2006 OK 36, ¶ 15, 142 P.3d 47 (refusal to pay workers' compensation award).[7] In our case today, Brown does not point to the breach of a statutory duty imposed by law upon the insurer-insured relationship.

¶ 11 The bad-faith action may also be based upon an insurer's failure to perform an act that is derivative or secondary in nature; that is, an insurer's duty that owes its existence to a preexisting implied contractual,[8] or statutory, or status-based duty arising from the insurer-insured relationship. For example, a duty to *timely* and *properly*

investigate an insurance claim is intrinsic to an insurer's contractual duty to *timely* pay a valid claim.[9] Similarly, bad-faith actions have been based upon an insurer's failure to follow judicial construction of insurance contracts [10] or available applicable law,[11] as well as upon duties that are necessary for an insurer's timely determination of a claim.

¶ 12 In our case today, this latter category of derivative or secondary duties is raised by Brown, in that he asserts bad faith is shown by OneBeacon's litigation efforts to both press a subrogation claim while denying that such a claim exists, all without either granting or denying a UM claim. Specifically, Brown asserts that OneBeacon acted in bad faith by intervening in Brown's action against

and intent of those statutes); *May v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania,* 1996 OK 52, 918 P.2d 43, 44 (UM coverage may be imputed to an insurance contract by operation of law); *Brown v. United Services Auto. Ass'n,* 1984 OK 55, 684 P.2d 1195, 1198 ("It is settled in Oklahoma that insurance policy provisions and definitions which purport to condition, limit or dilute the provisions of the uninsured motorist statute are void and unenforceable."); *Christian v. American Home Assurance Company,* 1977 OK 141, 577 P.2d 899, 903 (statutory duty to timely pay certain claims imposed by statute and duty required to be a part of certain insurance contracts); *Keel v. MFA Ins. Co.,* 1976 OK 86, 553 P.2d 153, 157 (a consent to sue clause, which attempted to place the requirement of the insurer's permission as a condition precedent, conditioned and limited the character of coverage mandated by the statute, and was thus void and of no effect).

7. We have explained that an insurer's duty to deal fairly and act in good faith must be based upon either a contractual or *statutory* relationship. *Roach v. Atlas Life Ins. Co.,* 1989 OK 27, 769 P.2d 158, 161. While we need not address the full scope of an insured/insurer statutory relationship, we note that one example is a statutorily defined interest or status, and an insurer's failure to implement that statute as part of the contract may give rise to a bad-faith action. *See, e.g., Conti v. Republic Underwriters Ins. Co.,* 1989 OK 128, 782 P.2d 1357, 1360 (insurer argued a legitimate dispute existed on the issue of an insurable interest and that a directed verdict should have been granted on a bad-faith claim, and the Court stated that the argument was without merit because insurer failed to apply the statutory definition for an insurable interest).

8. Generally, the rules of construction governing the interpretation of contracts apply when construing obligations created by an insurance con-

tract; and an insurance policy, a contract of adhesion, is construed to give reasonable effect to its provisions. *Dodson v. St. Paul Ins. Co.,* 1991 OK 24, 812 P.2d 372, 376; *National Life & Acc. Ins. Co. v. Cudjo,* 1956 OK 305, 304 P.2d 322, 325. *See also May v. Mid–Century Ins. Co.,* 2006 OK 100, ¶ 22, 151 P.3d 132, 140 (The rules of construction and analysis applicable to contracts govern equally insurance policies). A contract consists not only of its express language, but also of the obligations that are reasonably implied. *Wright v. Fidelity & Deposit Co. of Md.,* 1935 OK 1215, 54 P.2d 1084, 1087. See 15 O.S.2001 § 172.

9. *McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.,* 1992 OK 43, 841 P.2d 568, 570–571, (Court concluded that evidence supported jury's conclusion that insurer's investigation and handling of insurance claim was conducted in bad faith); *Buzzard v. Farmers Ins. Co., Inc.,* 1991 OK 127, 824 P.2d 1105, 1109 ("To determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances.").

10. *Wolf v. Prudential Ins. Co. of America,* 50 F.3d 793, 800 (10th Cir.1995), (ambiguous term in an insurance contract does not create a valid defense to a bad-faith claim based upon nonpayment because familiar rule of judicial interpretation of insurance contracts applies, and words of inclusion are liberally construed in favor of the insured and words of exclusion strictly construed against the insurer).

11. *Barnes v. Oklahoma Farm Bureau Mut. Ins.,* 2000 OK 55, ¶ 21, 11 P.3d 162, 171 (bad faith action was supported by insurer's failure to follow "the law readily available to insurer and its counsel" when handling insured's underinsured motorist claim).

Patel and asserting a subrogation claim against Patel and adopting Plaintiffs' allegations, and secondly, that OneBeacon acted in bad faith by asserting a subrogation interest "as a ruse to actually harm" Brown by OneBeacon's litigation conduct in defending Patel. Brown also asserts in his brief that he has **not** sued OneBeacon for bad faith in evaluating the amount of his claim. Brown contends questions of disputed fact exist regarding the reasonableness of OneBeacon's litigation conduct in light of its claims file showing a claim and the tortfeasor's liability.

¶ 13 OneBeacon asserts a right to intervene, and that an exercise of this right cannot be the basis for a breach of a duty owed to Brown. In other words, it argues that the outer limit of the duty to act in good faith and deal fairly cannot expand so as to prohibit OneBeacon's right to intervene. OneBeacon's view of the controversy presents the scope of an insurer's duty, a question of law.[12] The trial court granted summary judgment to OneBeacon, and we review *de novo* the questions of law presented.[13]

¶ 14 In *Keel v. MFA Ins. Co.*, 1976 OK 86, 553 P.2d 153, we said that an insured who has a claim against an uninsured motorist has the options to (1) file an action directly against his insurance company without joining the uninsured motorist as a party defendant and litigate all of the issues of liability and damages in that one action; (2) file an action joining both the uninsured motorist and the insurance company as party defendants and litigate all issues of liability and damages in one action; (3) file an action against the uninsured motorist without joining the insurance company as a party defendant, but give adequate notice of the filing and pendency of such action to the insurance company so they take whatever action they desire, including intervention; and (4) file an action against the uninsured motorist and give no notice to the insurance company. *Id.* 553 P.2d at 158.

¶ 15 The third option in *Keel* expressly allows the insurance company to intervene in the insured's action against an uninsured motorist. We subsequently relied upon *Keel* and held that a UM insurer was a proper defendant in an insured's action against an alleged tortfeasor. *Tidmore v. Fullman,* 1982 OK 73, 646 P.2d 1278, 1281–1282. Brown argues that an insurer may exercise a *Keel*-intervention, but only upon payment to the insured and creating a subrogation right that is enforceable by intervention. Brown argues that prior to payment on the policy OneBeacon's subrogation interest is too speculative to support a motion to intervene.

¶ 16 After *Keel* we adopted a procedure for intervention based upon its federal counterpart. 12 O.S.A. § 2024 (West 1993), (Committee Comment to Section 2024). Intervention may be classified as either intervention of right or permissive intervention. Title 12, Section 2024, provides in part:

A. INTERVENTION OF RIGHT. Upon timely application anyone shall be permitted to intervene in an action:

1. When a statute confers an unconditional right to intervene; or

2. When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest.

B. PERMISSIVE INTERVENTION. Upon timely application anyone may be permitted to intervene in an action:

---

**12.** Generally, all torts involve a breach of a duty or obligation imposed upon a party by the law itself where the breach is a civil wrong, other than contractual, for which an action for damages may lie. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts,* 1–4 (5th ed.1984). In negligence actions we have explained that the existence of a duty is a question of law. *First Nat. Bank in Durant v. Honey Creek Entertainment Corp.,* 2002 OK 11, ¶ 17, 54 P.3d 100, 105; *Delbrel v. Doenges Bros. Ford, Inc.,* 1996 OK 36, 913 P.2d 1318, 1320. The exact location of an

insurer's duty on the tort spectrum of negligence to intentional conduct, and all points between, is of no consequence to the principle that an issue on the existence and scope of a duty in tort presents a question of law for this Court.

**13.** Questions of law adjudicated by summary judgment are reviewed by this Court *de novo.* *Graham v. Travelers Ins. Co.,* 2002 OK 95, ¶ 8, 61 P.3d 225, 228; *Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.,* 2000 OK 55, ¶ 4, 11 P.3d 162, 166.

1. When a statute confers a conditional right to intervene; or

2. When an applicant's claim or defense and the main action have a question of law or fact in common.

Intervention of right pursuant to § 2024(A)(1) may occur when a statute confers an unconditional right to intervene. OneBeacon pled that it was entitled to intervene pursuant to 85 O.S. § 44 because it had expended $2,841.45 in medical expenses and reimbursements for workers' compensation benefits. This Court has recognized the statutory right of an employer or insurance carrier, having paid workers' compensation benefits, to intervene in an action against a third-party tortfeasor. *Nicholas v. Morgan*, 2002 OK 88, ¶¶ 20–21, 58 P.3d 775, 782. However, Brown's allegations against OneBeacon do not relate to OneBeacon's status as a workers' compensation carrier, but rather OneBeacon's conduct as his UM carrier.

¶ 17 OneBeacon argues for a right of intervention pursuant to § 2024(A)(2) based upon its status as Brown's UM Carrier. Section 2024(A)(2) states that intervention of right occurs when "the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest." The

language of § 2024(A)(2) is also found in its federal counterpart, and we may look to the federal court interpretation when we apply similar language from our pleading code.[14] Federal courts have construed this language as embodying four requirements for the motion to intervene: (1) the motion to intervene must be timely; (2) the intervenor must claim a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest.[15] These are occasionally referred to as the requirements of timeliness, interest, impairment of interest, and adequacy of representation. *Jones v. Prince George's County, Maryland*, 358 U.S.App.D.C. 276, 348 F.3d 1014, 1018 (D.C.Cir.2003).

¶ 18 OneBeacon's potential subrogation interest against Patel is of the same nature as Brown's asserted claim against Patel. Generally, intervention as of a right will be denied when a party to a controversy adequately represents the interest of the intervenor.[16] The Tenth Circuit has explained that it has "held that representation is adequate 'when the objective of the applicant for intervention is identical to that of one of the parties.' "[17] One federal court has explained

**14.** We have often explained that where the text of the Federal Rules of Civil Procedure has been adopted in the Oklahoma Pleading Code the construction placed on it by federal and state courts should be presumed to have been adopted as well. *See, e.g., Watford v. West*, 2003 OK 84, n. 4, 78 P.3d 946, 949; *Winston v. Stewart & Elder, P.C.*, 2002 OK 68, n. 27, 55 P.3d 1063, 1071; *Campbell v. Campbell*, 1994 OK 84, n. 7, 878 P.2d 1037, 1042; *Gay v. Akin*, 1988 OK 150, n. 18, 766 P.2d 985, 990

**15.** The analysis using four requirements to show a right to intervene was used by federal courts before and after our adoption of the federal rule as part of our pleading code. *See, e.g., Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir.1989); *Restor–A–Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2nd Cir.1984); *Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 120 (4th Cir.1981); *Armstrong v. Capshaw, Goss & Bowers, LLP*, 404 F.3d 933, 937 (5th Cir.2005); *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th

Cir.), *cert. denied*, 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984); *Jordan v. Michigan Conference of Teamsters Welfare Fund*, 207 F.3d 854, 862 (6th Cir.2000); *Heartwood, Inc. v. U.S. Forest Service, Inc.*, 316 F.3d 694, 700 (7th Cir. 2003); *Commodity Futures Trading Com'n v. Heritage Capital Advisory Services, Ltd.*, 736 F.2d 384, 386 (7th Cir.1984); *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir.2006); *San Juan County, UT v. U.S.*, 420 F.3d 1197, 1207 (10th Cir.2005); *In re Kaiser Steel Corp.*, 998 F.2d 783, 791 (10th Cir.1993); *Jones v. Prince George's County, Maryland*, 358 U.S.App.D.C. 276, 348 F.3d 1014, 1018–1019 (D.C.Cir.2003).

**16.** *In re General Tire and Rubber Co. Securities Litigation*, 726 F.2d 1075, 1087 (6th Cir.1984), *cert. denied, Schreiber v. Gencorp, Inc.*, 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984); *Utahns for Better Transp. v. U.S. Dept. of Transp.*, 295 F.3d 1111, 1117 (10th Cir.2002).

**17.** *City of Stilwell, Okl. v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1042 (10th Cir.1996), quoting, *Bottoms v. Dresser Indus., Inc.*, 797 F.2d

that a different motive to litigate will not, by itself, show an inadequate representation of the intervenor's interest.

A putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party. So long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented

*Natural Resources Defense Council, Inc. v. New York State Dept. of Environmental Conservation,* 834 F.2d 60, 61–62 (2d Cir. 1987).

OneBeacon's motion to intervene based upon subrogation was not based upon allegations that Brown's litigation conduct was less than vigorous.

¶ 19 We also note that an intervenor's interest must be "significantly protectable" or "direct, substantial, [and] legally protectable." [18] An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule for intervention as of right.[19] One federal court noted that the amount of authority was not overwhelming, but it indicated that an insurer may not intervene as a matter of right when the insurer's liability is contingent upon a future judgment between other parties. *Nieto v.*

*Kapoor,* 61 F.Supp.2d 1177, 1192 –1193 (D.N.M.1999), *affirmed,* 268 F.3d 1208 (10th Cir.2001). *Accord, In re Kaiser Steel Corp.,* 998 F.2d 783, 791 (10th Cir.1993), (the mere existence of a third person's contingent interest in the outcome of pending litigation is insufficient to warrant intervention of right).

¶ 20 Conventional (or contractual) subrogation is created by an agreement or contract between parties granting the right to pursue reimbursement from a third party in exchange for payment of a loss. *U.S. Fidelity and Guar. Co. v. Federated Rural Elec. Ins. Corp.,* 2001 OK 81, ¶ 9, 37 P.3d 828, 831. Equitable subrogation allows a party who has paid to stand in the shoes of the party to whom the amount was owed and proceed against the third party primarily responsible for the amount paid. *Id.* at ¶ 10. In both circumstances the subrogation is based upon payment.

¶ 21 An insurer's *payment* on a policy of insurance clearly creates a subrogation interest for the purpose of intervention.[20] If OneBeacon, as a UM carrier, desired to litigate a subrogation interest against Patel in Brown's action against Patel and intervene as a matter of right pursuant to 12 O.S. § 2024 (A)(2), then OneBeacon was required to make payment to Brown prior to its intervention.[21] We agree with Brown that a *potential* subrogation interest against an insured's alleged tortfeasor, by itself, is too remote to justify an insurer's right to intervene as a matter of right.

869, 872 (10th Cir.1986), and citing, *Kiamichi R.R. Co. v. National Mediation Bd.,* 986 F.2d 1341, 1345 (10th Cir.1993).

18. *Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971); *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 922 F.2d 92, 97 (2d Cir. 1990); *Piambino v. Bailey,* 610 F.2d 1306, 1321 (5th Cir.1980), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980); *Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior,* 100 F.3d 837, 840 (10th Cir.1996).

19. *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.,* 922 F.2d 92, 97 (2d Cir.1990), citing, *H.L. Hayden Co. v. Siemens*

Medical Systs., Inc., 797 F.2d 85, 88 (2d Cir. 1986); *Restor–A–Dent Dental Laboratories, Inc. v. Certified Alloy Prods., Inc.,* 725 F.2d 871, 874 (2d Cir.1984).

20. *U.S. Fidelity and Guar. Co. v. Federated Rural Elec. Ins. Corp.,* 2001 OK 81, ¶¶ 9–10, 37 P.3d 828, 831; *Ohio Casualty Insurance Company v. First National Bank of Nicholasville,* 1967 OK 55, 425 P.2d 934, 941; *Restor–A–Dent Dental Laboratories, Inc. v. Certified Alloy Prods., Inc.,* 725 F.2d 871, 875–876 (2d Cir.1984); *Black v. Texas Emp. Ins. Ass'n,* 326 F.2d 603, 604 (10th Cir.1964).

21. We are not called upon in this proceeding to discuss the procedure of 36 O.S.2001 § 3636, as amended, or any rights created thereby, and the

### III.

¶ 22 We arrive at a slightly different conclusion when we examine an insurer's interest to intervene for the purpose of denying coverage of the policy based upon either an element of its insured's cause of action or an element of the alleged tortfeasor's defense. A plaintiff's uninsured motorist insurer may possess an interest that coincides with the defendant. The insurer may want the defendant/uninsured motorist to contest fault and damages.

¶ 23 Courts in several states have allowed an uninsured motorist carrier to intervene in a tort action between its insured an uninsured tortfeasor. *Lima v. Chambers,* 657 P.2d 279, 281, 35 A.L.R.4th 747 (Utah 1982). In *Lima,* the court said, "The overwhelming majority of courts have allowed an uninsured motorist insurance carrier to intervene in a tort action between its insured and an uninsured tortfeasor." *Id.* 657 P.2d at 281. It further said that the questions litigated in the action between the insured and the uninsured tortfeasor, for liability and damages, are the identical issues which determine liability of the UM insurer to perform its contractual duty to pay the insured. *Id.* 657 P.2d at 282, quoting, *Heisner v. Jones,* 184 Neb. 602, 169 N.W.2d 606, 611 (1969).

¶ 24 The *Lima* court next examined whether the insurer's interest would be adequately represented in the particular controversy. The court noted that the uninsured motorist admitted liability, lacked the assistance of counsel, and proposed to litigate the issue of damages pro se. *Lima,* 657 P.2d at 283. The court also noted that the uninsured motorist did not appear to be concerned with minimizing damages, but "in bringing the whole matter to a close as soon as possible." *Id.* Although the legal interests of an UM insurer seeking to deny coverage and the tortfeasor appeared on the surface to be identical, they were divergent in practice because of the tortfeasor's litigation conduct. The court concluded that the insurer's interest to deny coverage was not adequately represented. *Id.* at 284.[22] The court also concluded, without deciding any res judicata and collateral estoppel issues, that a UM insurer is or may be bound by the tort judgment within the meaning of language of its intervention rule. *Id.*[23] Thus, an intervening insurer has been allowed to litigate *tort issues* in uninsured motorist cases where its interest was not adequately advanced by the tortfeasor. *See Chatterton v. Walker,* 938 P.2d 255, 258–259 (Utah 1997) (applying the four requirements for intervention).

¶ 25 OneBeacon's intervention for the purpose of contesting the cause of Brown's injuries or the amount of his damages was not based upon the inability of, or any lack in, Patel's defense to Brown's claims. Patel admitted liability at trial, but the admission is consistent with OneBeacon's claims file and OneBeacon has not asserted that Patel's admission was inappropriate. Patel successfully litigated his side and a judgment on a defendant's verdict was entered for Patel. OneBeacon did not utilize the four-step analysis of § 2024(A)(2). Nothing in the record on appeal shows that OneBeacon had a right to intervene pursuant to § 2024(A)(2).

### IV.

¶ 26 Legitimate disagreements can arise concerning the amount of coverage, cause of loss, and breach of policy conditions, and the tort of bad faith does not prevent the insurer from resisting payment or resorting to a judicial forum to resolve a legitimate dispute. *Skinner v. John Deere Ins. Co.,* 2000 OK 18, ¶ 16, 998 P.2d 1219, 1223; *Bal-*

---

opinion does not address the scope of that statute.

**22.** This result is consistent with federal court construction of the four requirements for intervention as a matter of right and the inadequacy of representation by collusion between the party purporting to represent the position of another and those on the other side of the suit. *Shump v. Balka,* 574 F.2d 1341, 1345 (10th Cir.1978).

**23.** Section 2024(A)(2) does not use "is or may be bound," but rather that the disposition of the action "may as a practical matter impair or impede" the intervenor's ability to protect his or her interest. 12 O.S.Supp.2003 § 2024(A)(2). The "is or may be bound" language in the Utah rule was amended after *Lima* and now corresponds to Oklahoma's version of the requirement. *Chatterton v. Walker,* 938 P.2d 255, 258 (Utah 1997).

*linger v. Security Connecticut Life Ins. Co.,* 1993 OK 69, 862 P.2d 68, 70; *Christian v. American Home Assurance Company,* 1977 OK 141, 577 P.2d at 904–905. In *Skinner* we indicated that an automobile insurer did not act in bad faith in filing interpleader and declaratory judgment action in federal court.[24] The duty to deal fairly and in good faith does not restrict an insurer's right to reasonably resist payment or resort to a judicial forum to resolve a legitimate dispute. *Id.* at ¶ 16, 998 P.2d 1219.

¶ 27 In *Keel v. MFA Ins. Co.,* 1976 OK 86, 553 P.2d 153, we explained that courts favor intervention and joinder of party defendants as a convenient or pragmatic method of settling controversies relating to the same subject matter. *Id.* 553 P.2d at 158. Although a UM insurer may not be able to show an intervention as a matter of right due to the circumstances in a particular controversy, the insurer may still seek permissive intervention to litigate the insurer's interests when an underlying question of fact or law is common to both an alleged tortfeasor's defense and an insurer's interests; i.e., "When an applicant's claim or defense and the main action have a question of law or fact in common." 12 O.S.Supp.2005 § 2024 (B)(2).

¶ 28 OneBeacon also argues for a UM insurer's right to intervene in an action by its insured against an alleged tortfeasor when the insurer seeks only to monitor the action. Intervention for the purpose of monitoring serves the insurer's purpose of determining whether the alleged tortfeasor is appropriately defending the action during the course of the litigation. OneBeacon argues for the right to seek permissive intervention, and if subsequent litigation circumstances would justify an intervention as a matter of right pursuant to the four-step analysis of § 2024(A)(2), then the insurer could present its interests on the *tort* issues between the insured and the alleged tortfeasor. We

agree with OneBeacon that courts favor intervention and joinder of party defendants as a convenient or pragmatic method of settling controversies relating to the same subject matter. We also conclude that § 2024 specifies when intervention is permissible.

¶ 29 In *Landrum v. National Union Insurance Co.,* 1996 OK 18, 912 P.2d 324, we recognized that the right to intervene does not bring with it the right to participate in every aspect of a controversy, and we observed that in its comments to 12 O.S. Supp. 1984 § 2024, the Civil Procedure Committee of the Oklahoma Bar Association said, "The court can take any appropriate steps to prevent the intervenor from prejudicing the trial of the action." *Id.* at ¶ 12, 912 P.2d at 328. In *Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 378, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987), the High Court observed that a grant of permissive intervention, even though subject to conditions, is not treated as a complete denial of the right to participate when the intervenor is given access to discovery information and allowed to participate to the extent not duplicative of other parties.

¶ 30 A UM insurer has a right to judicially contest the conditions that would give rise to an obligation to pay UM insurance. *Skinner v. John Deere Ins. Co., supra.* When a UM Insurer does not satisfy the conditions of intervention as a matter of right pursuant to § 2024(A), it *may* seek § 2024(B) permissive intervention in the cause of action brought by its insured against the alleged tortfeasor based upon its assertion of contesting coverage due to an element of the tort cause of action or a defense thereto. *If* permissive intervention is granted a district court may make the intervention subject to conditions that prevent prejudicing the parties.

## V.

¶ 31 Brown asserts that the bad-faith action against OneBeacon must be adjudicated

**24.** Some states allow post-judgment litigation of coverage issues in declaratory judgment actions. *See, e.g., Mutual Assur., Inc. v. Chancey,* 781 So.2d 172, 175 (Ala.2000). The parties in our controversy today do not present, and we decline to address *sua sponte,* the scope of 12 O.S.Supp. 2005 § 1651 and the availability, or non-avail-

ability, of a declaratory judgment proceeding for construction of an insurance policy. Thus we do not address intervention based upon a declaratory judgment request for adjudication of either tort issues or policy conditions unrelated to tort issues.

by a jury. Brown must point to some act or conduct of OneBeacon as the basis for the bad-faith claim. Brown asserts that One-Beacon's intervention is bad faith because it asserted a subrogation right when none existed, it adopted Patel's defenses, and One-Beacon's valuation of Brown's claim was less than the insurance available to Patel.

 ¶ 32 The district court granted the motion to intervene. Brown asserts that "OneBeacon set themselves up as an adversary instead of being on Brown's side, all of which is unreasonable and unjustified." Brown's Brief at 10. A UM insurer possesses a right to contest the "insured's side" and doing so, *by itself*, is not per se unreasonable. This is so because of the insurer's right to contest an insured's clam. *Skinner, supra,* and *Ballinger, supra.* Thus, intervention by a UM insurer is not by itself a violation of its duty to act in good faith towards its insured. On the other hand, the fact that an insurer was granted leave to intervene does not insulate that activity from a bad-faith action. An insurer may engage in certain litigation conduct pursuant to a procedural right and yet by that act violate its duty to an insured. *Badillo v. Mid Century Insurance Co.,* 2005 OK 48, 121 P.3d 1080.[25]

¶ 33 A distinguishing characteristic for a bad-faith action is *the particular duty owed to its insured* that has been breached by the insurer. In the controversy before us, the essence of Brown's bad-faith claim is not merely that OneBeacon filed its petition to intervene without sufficient legal reasons for doing so; but that by maintaining mutually inconsistent subrogation claims and adopting Patel's defenses, OneBeacon was continuing to maintain a fence-sitting position two years after the claimed injury, neither denying or approving a UM claim; in sum, that OneBeacon abrogated a duty to timely investigate and either to pay Brown and seek subrogation or to deny the claim.

¶ 34 Brown's brief states the issues for the purpose of responding to OneBeacon's summary judgment request:

The issue(s) in this case are (1) OneBeacon asserting a subrogation claim against Patel and adopting Plaintiffs' allegations, essentially admitting Plaintiffs' claims are in excess of $300,000; (2) OneBeacon has falsely and wrongfully asserted such subrogation interest herein as a ruse to actually harm its insureds by actively defending Patel.

Brown's Brief at pg. 22.

In support of this characterization Brown argues that OneBeacon had almost two years to investigate Brown's claim prior to the intervention, and that OneBeacon's claims manager stated that "We filed intervention so we could find out what his injuries were and we could evaluate his claim to determine whether now we have a UM claim or not." Brown's Brief at 21. Brown asserts that OneBeacon never questioned the cause of Brown's injuries prior to the intervention. *Id.* at 22. Brown asserts that OneBeacon's claims manager and a legal opinion provided to OneBeacon prior to the intervention agreed that OneBeacon had no subrogation rights until it made a payment to Brown. *Id.* at 3, 11, 33–35. Brown asserts that

> Throughout the claims file, OneBeacon noted that Mr. Patel was 100% at fault, never questioning the same. Further, OneBeacon's claims adjusters evaluated Brown's bodily injury, noting his bodily injuries, pain, suffering, and medical bills were causally related. OneBeacon never took statements of its insured, the eyewitnesses, the adverse driver (Mr. Patel), or the police officer. OneBeacon never requested that a medical examination be performed. In over a year and a half, OneBeacon never questioned medical causation in the file.

Brown's Brief at 3.

Brown also asserts that OneBeacon had no written guidelines, claims manual, or training regarding how to evaluate damages. *Id.* at 8, 38. And again, "It is OneBeacon's responsibility to investigate and evaluate the claims. OneBeacon is abdicating its responsibilities and asking the Court and jury to be part of

---

25. Similarly, the fact that an insured ultimately prevails on his insurance claim does not make an insurer's previous denial of the claim bad faith

per se. *Manis v. Hartford Fire Ins. Co.,* 1984 OK 25, 681 P.2d 760, 762.

its claims department ..." Brown's Brief at 5.

¶ 35 OneBeacon asserts that it has a right to litigate contested claims, a right to intervene and that the jury's verdict for Patel forecloses, as a matter of law, any bad-faith claim. It argues that an insurer's methods in investigating and litigating a UM claim may be conclusively justified if a court subsequently determines that no UM payment is owed. In other words, it seeks for a "means justified by ends" rule of law for an UM insurer's handling of UM claims. A related complaint is made by Brown concerning One-Beacon's use of information that OneBeacon did not possess until after OneBeacon's intervention. Evidence relating to facts that One-Beacon did not have or rely on until after the time period in question, that is, from the time of OneBeacon's notice of the collision until the intervention, is not relevant to an adjudication of a bad-faith claim concerning the intervention. *Newport v. USAA*, 2000 OK 59, ¶ 10, ¶¶ 36–37, 11 P.3d 190, 195, 200 (an insurer's good faith belief is measured by facts known, or relied on, by the insurer at the time of the conduct challenged as showing bad faith on the part of the insurer).[26]

¶ 36 An insured in an action of this nature is required to show that (1) he or she was covered under an automobile liability insurance policy issued by the insurer and that the insurer was required to take reasonable actions in handling the UM claim, (2) the actions of the insurer were unreasonable under the circumstances, (3) the insurer failed to deal fairly and act in good faith toward the insured in handling the UM claim, and (4) the breach or violation of the duty of good faith and fair dealing was the direct cause of any damages sustained by the insured. *Badillo v. Mid Century Insurance Co.*, 2005 OK 48, ¶ 25, 121 P.3d 1080, 1093. We have explained that the essence of an action for breach of the duty of good faith and fair dealing is the insurer's unreasonable, bad-faith conduct, and that if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case. *Badillo*, at ¶ 28, 121 P.3d at 1093. A central issue in any analysis to determine whether breach has occurred is gauging whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are claimed violative of the duty of good faith and fair dealing. *Badillo*, at ¶ 28, 121 P.3d at 1093–1094.

¶ 37 In two opinions applying Oklahoma law the Tenth Circuit Court has stated that an insurer does not breach the duty of good faith to pay a claim "by litigating a dispute with its insured if there is a 'legitimate dispute' as to coverage or amount of the claim, and the insurer's position is 'reasonable and legitimate.'" *Vining on Behalf of Vining v. Enterprise Financial Group, Inc.*, 148 F.3d 1206, 1213 (10th Cir.1998), quoting, *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir.1993). The *Oulds* opinion relied upon *Thompson v. Shelter Mut. Ins.*, 875 F.2d 1460, 1462 (10th Cir.1989) and *Manis v. Hartford Fire Ins. Co.*, 1984 OK 25, 681 P.2d 760. *Oulds*, 6 F.3d at 1436. In *Manis* we recognized an insurer's right to contest a claim based upon reasonable and legitimate actions. *Manis*, 681 P.2d at 762. We have often repeated this rule. *See, e.g., Skinner, supra*, and *Ballinger, supra*.

¶ 38 OneBeacon contested Brown's claim when it intervened and asserted Patel's defenses against Brown in Brown's action against Patel. It sought a legal adjudication that Brown's claim was not covered by the policy. OneBeacon, as an insurer, possessed a procedural right to take such action, but for the purpose of the bad-faith action the question remains whether such conduct was legitimate and reasonable.

¶ 39 Summary judgment is appropriate where it appears there is no substantial controversy as to any material fact and one party is entitled to judgment as a matter of law. *Baker v. Saint Francis*

---

26. Because we reverse the summary adjudication we need not address in detail which evidentiary materials submitted by OneBeacon should have been disregarded, or stricken, by the district court as requested by Brown.

*Hosp.,* 2005 OK 36, ¶ 6, 126 P.3d 602, 604. When we examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties on the motion for summary adjudication, all inferences and conclusions to be drawn must be viewed in a light most favorable to the party opposing the motion. *Baker v. Saint Francis Hosp.,* at ¶ 6, 126 P.3d at 604; *Pickens v. Tulsa Metropolitan Ministry,* 1997 OK 152, 951 P.2d 1079, 1082.

¶ 40 The facts presented by the parties conflict on why OneBeacon filed its petition for intervention. The facts presented by Brown, viewed in a light most favorable to Brown, reveal a claims file showing a value of Brown's UM claim; that his injuries were caused by the motor vehicle collision involving Patel; that no, or least a very minimal, investigation was performed by OneBeacon during the two years before it intervened in Brown's action; that the major concern expressed by OneBeacon in its claims file was whether OneBeacon needed to file an action against Patel to preserve subrogation rights; the amount of reserve OneBeacon needed for the UM claim; and OneBeacon's representative stating that intervention was made to evaluate the UM claim. Brown's asserted facts do not agree with OneBeacon's assertions that it was concerned prior to intervention whether Brown's claim was covered by the policy. A substantial question of material fact exists regarding the reasons for the petition for intervention, or legal action, One-Beacon instituted against Brown. The district court's order granting summary judgment to OneBeacon must thus be reversed.[27] The matter is remanded to the District Court for further proceedings consistent with this opinion.

¶ 41 EDMONDSON, V.C.J., LAVENDER, OPALA, WATT, AND COLBERT, JJ., Concur.

¶ 42 KAUGER, J., Concurs in result.

27. Because we reverse the summary judgment granted to OneBeacon we need not discuss whether we should address the incorporation of

¶ 43 WINCHESTER, C.J., Concurs in part, dissents in part.

¶ 44 HARGRAVE, TAYLOR, JJ., Dissent.

Brown's motion to compel discovery of material in the claims file prior to OneBeacon's intervention as a part of his summary judgment brief.