FILED
United States Court of Appeals
Tenth Circuit

September 28, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROSS OLDENKAMP and LAURA
OLDENKAMP,

      Plaintiffs - Appellants/Cross -
Appellees,

v.

UNITED AMERICAN INSURANCE
COMPANY,

      Defendant - Appellee/Cross -
Appellant.

Nos. 09-5032 and 09-5039

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(No. 4:07-CV-00601-TCK-PJC)**

Steven V. Buckman, Buckman & Roach, Tulsa, Oklahoma, for the Appellants/Cross -
Appellees.

John D. Russell, (Charles R. Willing with him on the brief), Fellers, Snider, Blankenship,
Bailey & Tippens, P.C., Tulsa, Oklahoma, for the Appellee/Cross - Appellant.

Before **HARTZ, HOLLOWAY,** and **GORSUCH**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

      These cross-appeals are from a district court decision that granted partial summary

judgment to each side in an insurance coverage dispute, which also includes a "bad faith claim" against the insurer. Plaintiffs-appellants, the Oldenkamps, sued their insurer, Defendant-appellee United American Insurance Company (United), over United's denial of a claim for coverage of a medical procedure for their infant son. On cross-motions for summary judgment, the district court found in favor of the Oldenkamps on their claim for breach of contract. The district court simultaneously found that United had not acted in bad faith because the state of the law was unclear and thus the denial of coverage, even though erroneous in the district court's view, had been reasonable. Consequently, the court granted summary judgment to United on the bad faith claim and also ruled that the Oldenkamps could not be awarded punitive damages.

Both sides have appealed. The Oldenkamps, in addition to challenging the rulings already noted, also challenge the denial of their motion for spoilation sanctions.

This lawsuit was filed in state court by the Oldenkamps and removed to federal court by United on the basis of diversity of citizenship. Appellate jurisdiction is based on 28 U.S.C. § 1291.

## I

The Oldenkamps had purchased a policy of insurance titled Limited Benefit Hospital and Surgical Expense Policy from United with an effective date of August 1, 2006 (the policy). The policy covered the Oldenkamp couple and their infant son.

The Oldenkamps' son was born with a congenital defect, a type of cyst on his right eyelid. The cyst was first noted by a doctor in late April 2006 during a routine well-baby

examination. That doctor made a note "to surgeon" in his record of the exam, but in deposition said that he probably did not refer the Oldenkamps to a surgeon at that time because the condition was not urgent and the baby was too young for surgery. In any event, coverage under the policy began on August 1, 2006, and in September 2006, the boy was taken to see a surgeon. The surgeon recommended excising the cyst, which was done successfully later in September.

When the medical bills for the procedure were submitted for payment, United evaluated the statements, requesting medical records from various service providers and asking the Oldenkamps to complete a "Claimant's Statement." United denied payment for the claims upon its determination that the cyst was a pre-existing condition excluded under the policy. Ms. Oldenkamp responded by letter to United, requesting reconsideration. United sent a second letter, affirming its decision to deny payment based on the pre-existing condition exclusion.

The policy included the following Pre-Existing Condition Limitation:

This policy does not insure You against loss incurred during the twelve (12) months immediately after the effective date of this policy if that loss results from a Pre-Existing Condition. In addition, any Pre-Existing Condition listed on the application is not covered for the first twelve (12) months after the policy effective date.

Under the policy, a "pre-existing condition" is defined as:

any condition for which symptoms existed which would cause an ordinary prudent person to seek diagnosis, care or treatment within the 12 month period immediately prior to the effective date of Your or the Family Member's coverage under this policy. It also means any condition for

which the Family Member did receive treatment or medical advice during the 12 month period immediately prior to your or the Family Member's effective date of coverage under this policy.

## II

"We review a grant of summary judgment *de novo*, applying the same standard as the district court." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). Under Fed. R. Civ. P. 56(c)(2), summary judgment should be entered by the district court "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." On appeal,

> [w]e examine the record to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the substantive law was applied correctly, and in so doing we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion.

*McKnight*, 149 F.3d at 1128 (brackets and quotations omitted).

## A

We first address United's appeal from the district court's ruling on the Oldenkamps' breach of contract claim. For purposes of the cross-motions for summary judgment below, and for this appeal, the Oldenkamps do not dispute United's contention that their son's cyst was a "pre-existing condition" within the meaning of the policy. The Oldenkamps' primary contention on the breach of contract issue is that the exclusion of pre-existing conditions was contrary to Oklahoma law. More specifically, the

Oldenkamps rely on a regulation promulgated by the Oklahoma Insurance Department. That regulation is found in the chapter of the Oklahoma Administrative Code applicable to "accident and health insurance," and it provides, in pertinent part:

> *Prohibited policy provisions.*
> . . . .
> (e) Policy limits or exclusions, Exceptions. No policy shall limit or exclude coverage by type of illness, accident, treatment or medical condition, except as follows:
>> (1) Pre-existing conditions or diseases, except for congenital anomalies of a covered dependent child;
>> . . . .

Okla. Admin. Code § 365:10-5-4. In other words, under Section 365:10-5-4 (the regulation) exclusions for pre-existing conditions are allowed, but not for congenital anomalies of dependent children.

United contends that the regulation is not applicable to the policy because the policy is not a health insurance policy, under Oklahoma law, but a "limited benefit policy," and it argues that the regulation applies only to health insurance policies. Resolution of this issue involves consideration of several Oklahoma statutes.

United contends that Oklahoma law recognizes a distinction between health insurance policies and limited benefit policies. United cites a statutory definition of "accident and health insurance policy":

> *Definition of accident and health insurance policy.*
> The term "policy of accident and health insurance" as used herein includes any policy or contract insuring against loss resulting from sickness, or from bodily injury or death by accident or both. Provided, however, *the term does not include coverage provided under a limited benefit insurance policy or contract as defined in Section 4403.1 of this title.*

-5-

36 Okla. Stat. § 4403 (emphasis added). The referenced definition of limited benefit insurance is as follows:

> *Definition of limited benefit insurance policy.*
> A. 1. "Limited benefit insurance" means a policy or contract designed to be purchased individually or to supplement major medical accident and health insurance and which only provides coverage that is less than the minimum standard for benefits required under basic hospital expense coverage or basic medical-surgical expense coverage.
>
> 2. A limited benefit insurance policy or contract may specify a waiting period for coverage . . . .

36 Okla. Stat. § 4403.1(A).

The Oldenkamps counter with an argument that limited benefit policies are not separate, distinct creatures, but rather are a category of "accident and health insurance." They cite 36 Okla. Stat. § 3611(4), which instructs the Oklahoma Insurance Department to adopt "rules and regulations which establish minimum standards of benefits and identification for each of the following categories of coverage . . . of accident and health insurance: . . . (h) limited benefit insurance." Therefore, while sections 4403 and 4403.1, when read together, directly provide that limited benefit policies are distinct from accident and health insurance policies, section 3611(4) suggests the contrary, because it describes limited benefit insurance as a category of accident and health insurance.

The district court resolved this conflict in the statutes by reliance on the regulation, the language of which the judge described as "strong and precise." We must disagree with this approach in the circumstances of this case. As we shall explain, one of the statutes in conflict pre-dates the regulation, while the other two were enacted after it.

Therefore, the Oklahoma Insurance Department, in enacting the regulation, could not have been attempting to unravel the statutory puzzle that we address here. "An agency's authority to make rules under statutory authority is limited to the authority granted by those statutes, and such rules may not be contrary to those statutes." *Heiman v. Atl. Richfield Co.*, 891 P.2d 1252, 1256 n.2 (Okla. 1995). The language of the regulation cannot logically be used to resolve a conflict between statutes when the regulation was promulgated before some of the statutes in conflict. Consequently, we must interpret the statutes employing the relevant principles in order to predict the result that the Oklahoma Supreme Court would reach. *See Boehme v. U.S. Postal Serv.*, 343 F.3d 1260, 1264 (10th Cir. 2003).

"[T]he primary goal of statutory interpretation is to ascertain and follow the Legislature's intention." *Duncan v. Oklahoma Dept. of Corr.*, 95 P.3d 1076, 1079 (Okla. 2004).

> It is also the settled rule when a court is construing seemingly conflicting statutes that a specific statute controls over one of more general applicability and the most recent enactment controls over an earlier one. It is further understood that only when two statutory provisions irreconcilably conflict will an implied repeal of the earlier or more general provision be found. Finally, the more recent and specific statute will be determined to modify or supercede an earlier, more general statute only to the extent necessary to avoid the irreconcilable conflict or inconsistency.

*Id.* (internal citations omitted).

These principles of statutory construction guide our task here. We address the inconsistencies in the statutes only to the extent necessary to resolve them in the context

of this particular dispute. The Oldenkamps' argument that a limited benefit policy is a type of health insurance – and so subject to the regulation – is based on statutory language that appears to have been unchanged since 1979, when subsection B was added to 36 Okla. Stat. § 3611 (to be effective on January 1, 1982). As previously noted, that subsection directed the Oklahoma Insurance Department to adopt rules and regulations, and the regulation prohibiting exclusions for congenital anomalies of dependent children was promulgated in response to that directive (also with an effective date of January 1, 1982).

United's argument relies on statutes that are of more recent vintage and are more specific with regard to limited benefit policies. The Oklahoma legislature did not define "limited benefit insurance" until it passed 36 Okla. Stat. § 4403.1(A) in 1996 and, in doing so, it specifically excluded limited benefit insurance from the definition of "accident and health insurance" in 36 Okla. Stat. § 4403.[1] Where the regulation forbids excluding or limiting coverage for congenital anomalies of dependent children, section 4403.1(A)(2) specifically provides that a policy of limited benefit insurance may include a waiting period for coverage. This is a direct conflict with the regulation because the waiting period clearly does limit coverage for the congenital defect at issue here, as the language of the policy makes plain:

> This policy does not insure You against loss incurred during the twelve (12) months immediately after the effective date of this policy if that loss results from a Pre-Existing Condition. In addition, any Pre-Existing condition

---

[1]These statutes are quoted in pertinent part *supra*.

> listed on the application is not covered for the first twelve (12) months after the policy effective date.

I Jnt. App. 142.

The regulation, as applied by the district court in this context, is contrary to the more recent statutes. It therefore may not be applied here to invalidate the policy provision that is specifically authorized by statute.

Accordingly, we hold that the more specific and more recent statutory provisions must control here. A waiting period for coverage of pre-existing conditions in limited benefit policies is expressly authorized by section 4403.1. The regulation, which provides that pre-existing conditions may not be excluded for congenital anomalies of dependent children, was promulgated before the Oklahoma legislature enacted section 4403.1, defining limited benefit insurance for the first time and specifically permitting such insurance to include a waiting period for coverage. The regulation cannot control over the more recent enactment of the legislature. We need not decide on this appeal whether the Oklahoma Insurance Department could now enact a similar regulation applicable to limited benefit insurance.

It was therefore error for the district court to grant summary judgment in favor of the Oldenkamps on their breach of contract claim, and that ruling is reversed.[2] The

---

[2]The Oldenkamps contend that the resolution of the statutory conflict that United has advanced and with which we have agreed is contrary to 36 Okla. Stat. § 4403.1(B), which provides that "[n]othing in this section shall increase, limit, or remove jurisdiction of the Insurance Commissioner over limited benefit insurance." We see no merit in this argument, which amounts to the contention that the legislature, having specifically provided in section 4403.1(A) that limited benefit policies may include a "waiting period

-9-

district court's opinion noted that the Oldenkamps had argued, in their reply brief below, that the policy is not actually a "limited benefits" policy. Dist. Ct. Order of June 3, 2009 at 11, n.6. We leave it for that court on remand to determine whether this issue was properly raised and preserved there. Although the Oldenkamps could have advanced this argument as an alternative ground for affirming the district court's ruling in their favor, a party is not required to raise alternative arguments.

## B

We next address the Oldenkamps' appeal from the district court's grant of partial summary judgment in favor of United on the Oldenkamps' "bad faith" claim. The term "bad faith claim" is shorthand for a claim based on alleged breach of the implied duty of good faith and fair dealing. *See Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1092 (Okla. 2005).

Although the district court held in favor of the Oldenkamps on their breach of contract claim, it granted partial summary adjudication in favor of United on the bad faith claim, primarily because the district court concluded that United had raised a legal argument on which there was no controlling decision by the Oklahoma courts which

for coverage," simultaneously restricted that permission by ratifying the regulation that the Insurance Department had promulgated years earlier, when there was no definition of "limited benefit insurance policy."

We have held that the legislature's passage of sections 4403 and 4403.1 does limit the reach of the regulation, but we think it a *non sequitur* to characterize that effect as limiting or removing the jurisdiction of the Insurance Commissioner over limited benefit insurance. Rather, the modification of the legislative scheme controls and directs the Commissioner's exercise of his jurisdiction consistent with the basic functions of legislative and administrative bodies.

would have shown that the argument was unreasonable.  We agree with the district

court's ruling on this point.  It is well settled that "[t]ort liability arises only 'where there

is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of

the claim of its insured.'"  *Skinner v. John Deere Ins. Co.*, 998 P.2d 1219, 1223 (Okla.

2000) (quoting *Christian v. Am. Home Assurance Co.*, 577 P.2d 899, 904 (Okla. 1977)).

An insurer does not act unreasonably when it withholds payment based on a "legitimate

dispute" regarding coverage.  *Id.*  Indeed, because we have held that United did not

breach the insurance contract by denying coverage under these circumstances, it follows

that we necessarily agree that United's denial of coverage was reasonably based.[3]

The Oldenkamps argue that United's position was not reasonable because a claims

representative testified in deposition that she was unaware of the regulation.  United was

nevertheless aware that its policy at least arguably excluded coverage for the claim.  We

can hardly say that United's position was unreasonable when we have been persuaded

---

[3]We note that a number of Oklahoma cases can be found which at the least suggest
that a claim must ultimately be determined to have been a covered claim, which should
have been paid, for a bad faith claim to be cognizable.  *See, e.g., Skinner v. John Deere
Ins. Co.*, 998 P.2d 1219, 1223 (Okla. 2000); *see also* Okla. Unif. Jury Instructions – Civil
No. 22.2 (2d ed. 1996).
    At oral argument, counsel for the Oldenkamps asserted that a bad faith claim can
proceed in Oklahoma even when the underlying coverage claim fails, citing *Brown v.
Patel*, 157 P.3d 117 (Okla. 2007).  Under the particular circumstances of that case, the
Oklahoma Supreme Court did indeed hold that a bad faith claim could be successfully
brought by an insured whose primary breach of contract claim had failed.  *Id.* at 119.
Apparently the Oklahoma Supreme Court has not had an opportunity to decide whether or
not to apply the holding of *Brown* generally.  Because we conclude here that the
Oldenkamps have in any event failed to show error in the district court's ruling, we need
not and do not express any opinion on the breadth of the *Brown* holding.

that it is, in fact, correct. We are also unpersuaded by the Oldenkamps' reliance on United's failure to obtain a legal opinion regarding the question. That fact might have probative value if the question were whether an erroneous denial of coverage was reasonable or not, but it cannot support a finding of unreasonableness when the position taken without advice of counsel was reasonable.

The Oldenkamps also allege that a letter from United falsely stated that the claim had been reviewed by a physician. United counters by contending that the physician merely testified that he did not recall reviewing the claim, rather than admitting that he had not. We need not try to resolve this point. The district court held that the Oldenkamps had not, in any event, shown that the use of the physician's name caused their damages, citing *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005), for the proposition that they must show that the alleged violation of the duty of good faith and fair dealing was the direct cause of damages. On appeal, the Oldenkamps have ignored this basis for the district court's ruling. We see no error in it.

Finally, the Oldenkamps allege bad faith on the part of United in giving them "the runaround" in response to the claim, in allegedly failing to produce (and allegedly actually having destroyed) evidence, and in taking inconsistent positions about its employees' access to and use of electronic mail. These contentions are unavailing for the same reason: the Oldenkamps have produced no evidence to suggest that any of these matters influenced United's decision to rely on the language of its policy in denying their claim. Moreover, some of these allegations are simply unsupported. The district court

found that United had produced all documents that it could locate, and the Oldenkamps have neither appealed that, nor shown any reason for this court to conclude that the district court's finding was erroneous. As to the alleged destruction of evidence, that is discussed in part II-C, *infra*.

We therefore affirm the district court's grant of partial summary adjudication in favor of United on the Oldenkamps' tort claim for breach of the duty of good faith and fair dealing. As previously noted, the Oldenkamps raised an argument in the district court that the policy is not a limited benefit policy, and we have expressed no opinion on whether the argument was properly raised there. In the event that the district court should decide that the Oldenkamps may proceed on that theory, we will also leave it for the district court on remand to determine if the Oldenkamps may still advance a bad faith claim on grounds other than those decided here.

The district court correctly held that the Oldenkamps could not seek punitive damages because their bad faith claim had failed. *See Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 893 (10th Cir. 2006). We therefore affirm that ruling along with the partial summary judgment in favor of United on the bad faith claim.

## C

Finally, we review the district court's denial of the Oldenkamps' request for spoilation sanctions, which was made in the district court in conjunction with their motion to compel discovery responses. (The Oldenkamps have not appealed the denial of the motion to compel.) The Oldenkamps specifically sought an instruction to the jury that

adverse inferences may be drawn from a party's destruction of evidence. We review the district court's ruling under the abuse of discretion standard, while underlying factual findings will stand unless clearly erroneous. *See BNSF Ry. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007). For the Oldenkamps to have the benefit of the type of jury instruction they requested, they must show that United acted in bad faith in destroying evidence. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997).

We note initially that the Oldenkamps requested the adverse inference instruction to be given to the jury if and when their bad faith claim came to trial. With our ruling in part B, *supra*, the prospect of such a trial is uncertain. Nevertheless, because there is some possibility that it could occur, we conclude that this issue is not moot.

We affirm the ruling of the district court on the grounds set out by the magistrate judge and adopted by the district court. In essence, the magistrate judge found that the Oldenkamps had produced no evidence to support their allegations that evidence had been willfully destroyed. Indeed, with the exception of the single "telephone communications referral," the Oldenkamps had not produced evidence that any of the documents or recordings they sought had ever existed. As to the one piece of missing evidence, the magistrate found no evidence to support the allegation that the document had been destroyed rather than lost. Moreover, the document was created by a customer service representative after (or perhaps during) a recorded telephone conversation with Ms. Oldenkamp. The magistrate judge noted that in the recording the representative told Ms. Oldenkamp the essence of the written communication she was creating in response to the

call, the document that the Oldenkamps now allege was destroyed. Thus, the magistrate concluded, there was no prejudice in any event.

The Oldenkamps contend on appeal that the finding of no prejudice was erroneous because in the recorded telephone call the claims representative had told Ms. Oldenkamp "basically" what the message was that she was sending and that "basically" is "not everything." This is a naked invitation for this court to speculate first that there is something missing and second that what is missing might be of evidentiary value. We decline the invitation. Moreover, the Oldenkamps have not shown this court that there is any evidence to support their allegation that the recording was destroyed rather than lost, and so we find no abuse of discretion in the district court's ruling.

Besides this one document, the Oldenkamps discuss the absence of recordings of telephone conversations before the surgery in which, they allege, United had made representations that the surgery would be covered. Ms. Oldenkamp had one such conversation, and a member of the surgeon's staff had another.[4] Although United records some telephone calls, it apparently did not record all, a fact that the Oldenkamps concede in their reply brief, in which they state:

> Although United has 72 recording stations available at any given time, these critical calls were inadvertently not recorded. But more telling than the missing recordings is [the fact that] United never looked for these recordings to investigate the allegations [that] advance approval had been given for the surgery and undertook no effort to preserve them upon

---

[4]United disputes the Oldenkamps' characterization of the conversations, citing deposition testimony that it does not give advance approval of procedures, at least without having the opportunity to review medical records.

-15-

anticipating litigation.

The Oldenkamps have not shown that additional recordings existed, much less that they were destroyed in bad faith.

We affirm the district court's ruling on the alleged spoilation of evidence.

**III**

For the reasons given, this court affirms the district court's rulings on the bad faith claim and the punitive damages issue and reverses the district court's grant of partial summary judgment in favor of the Oldenkamps on the breach of contract claim. The matter is remanded to the district court for further proceedings consistent with this opinion.

It is so ordered.