FILED
United States Court of Appeals
Tenth Circuit

January 28, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

LEON SHAW,

        Plaintiff-Appellant,

v.

TULSA DYNASPAN ARROW
CONCRETE,

        Defendant-Appellee.

No. 10-5066
(D.C. No. 4:09-CV-00132-GKF-TLW)
(N.D. Okla.)

---

ORDER AND JUDGMENT[*]

---

Before **MURPHY**, **McKAY**, and **HOLMES**, Circuit Judges.

---

Leon Shaw, who is African American, was a concrete driver for defendant

Tulsa Dynaspan Arrow Concrete ("TDI")[1] for approximately ten months until TDI

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]     The defendant identifies itself as Tulsa Dynaspan d/b/a Arrow Concrete, *see* Aplee. Br. at 1, and both parties abbreviate the defendant's name as "TDI," *see id.*; Aplt. Br. at 1. For ease of discussion, we will also refer to the defendant as "TDI."

terminated his employment after he was involved in a verbal dispute with a customer. Mr. Shaw ultimately filed suit against TDI alleging that TDI discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and 42 U.S.C. § 1981. Specifically, Mr. Shaw claimed that TDI subjected him to a hostile work environment, wrongfully terminated him because of his race, and terminated him in retaliation for complaining about discrimination. The district court granted summary judgment in favor of TDI on all claims. We affirm in part and reverse in part.

I.

"We review a grant of summary judgment *de novo*, applying the same standard as the district court." *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1246 (10th Cir. 2010) (internal quotation marks omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] In conducting our review, we construe the evidence and the

---

[2] Rule 56 has recently been amended, effective December 1, 2010. The summary judgment standard previously enumerated in subsection (c) was moved to subsection (a), and there was one word change from the previous version– genuine "issue" became genuine "dispute." Fed. R. Civ. P. 56 advisory committee note (2010 Amendments). But the "standard for granting summary judgment remains unchanged." *Id*.

reasonable inferences from it in the light most favorable to the non-moving party. *See Oldenkamp*, 619 F.3d at 1246.

A.

To survive summary judgment on a hostile-work-environment claim, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1326-27 (10th Cir. 2004) (internal quotation marks omitted). A plaintiff must also submit evidence allowing a jury to infer that he was harassed due to his race. *Id*. The district court concluded that Mr. Shaw "ha[d] not presented evidence of harassment so pervasive and/or severe that it altered [his] terms or conditions of work." Aplt. App., Vol. 2 at 276. We agree.

In response to summary judgment, Mr. Shaw identified what he considered to be "negative references toward African Americans," which he argued established he was subjected to a hostile work environment. *Id*. at 175. These included: racially offensive text messages between a manager and another driver, racial remarks by TDI management to a female employee in his presence, racially derogatory remarks by Danny Ammons (the customer with whom Mr. Shaw had a verbal dispute), and a manager's reference to Mr. Shaw as a "nigger," *id*. at 167,

-3-

outside of Mr. Shaw's presence.[3] *See id*. at 165-68; 175. Mr. Shaw argued that "the conduct at issue was sufficiently severe and humiliating so as to unreasonably interfere with [his] ability to perform his job." *Id*. But his own deposition testimony is to the contrary.

With respect to the racially offensive text messages, Mr. Shaw testified that he did not receive any of the text messages personally. *See id*., Vol. 1 at 81. He learned about them when Darren Overbey, a fellow employee, showed him some that Mr. Overbey had received. *Id*. at 80-81. Mr. Shaw testified that he did not think Mr. Overbey was trying to harass him by showing him the text messages, *id*. at 128, and that "the text messages weren't really a big - - as long as I was getting my hours and I was working, you know, getting a paycheck to support my family, that was the main thing to me," *id*. at 88. Likewise, when he was asked about the racial comments that were made in his presence to his co-worker, Jessica, he testified, "I can remember some small things like . . . 'You don't need to be talking to the black guy, get to work . . . . [O]f course, you know, for me working around guys, you know, all that stuff just blows right over my head or whatever." *Id*. at 93. He further testified that Jessica seemed more offended about the

---

[3] This list also included allegations about how Mr. Shaw was skipped in the work rotation and how he was told he could "hit the road," when he complained about being skipped, Aplt. App., Vol. 2 at 175. But Mr. Shaw has not cited to any evidence demonstrating that these alleged scheduling issues involved "harassment because of . . . [his] race," *Sandoval*, 388 F.3d at 1327.

remarks then he did, *see id.*, and that "small things - - small jokes like that . . . really didn't bother me that much," *id.* at 94.

Mr. Shaw also testified about his verbal dispute with Mr. Ammons and the racially derogatory names he was called. But he explained, "the main thing that really upset me the most with that whole ordeal, it wasn't even the name calling, what bothered me most was that [Ammons] told me that he was going to make a phone call to boss man here and have my job when I got back to the plant, that's what offended me the most." *Id.*, Vol. 2 at 195. Finally, Mr. Shaw referenced deposition testimony from Mr. Overbey, who testified that he did not hear any employees at TDI make racial comments in front of Mr. Shaw, but that he did hear other employees refer to Mr. Shaw using "the n-word quite a bit," when Mr. Shaw was not around, *id.* at 212. But Mr. Shaw has not presented any evidence that he was aware of these racial comments while he was at TDI or that they affected his ability to work. Because Mr. Shaw's evidence did not show that racially offensive conduct "permeated" his workplace and interfered with his ability to work, TDI was entitled to summary judgment on this claim. *See Sandoval*, 388 F.3d at 1327.

B.

In considering whether Mr. Shaw presented sufficient evidence to survive summary judgment on his wrongful termination claims under Title VII and

§ 1981, the district court employed the familiar *McDonnell Douglas*[4] burden-shifting analysis. *See Kendrick v. Penske Transp. Servs. Inc*., 220 F.3d 1220, 1225-26 (10th Cir. 2000). Under that framework, Mr. Shaw must first establish a prima facie case of racial discrimination. *See id*. at 1226. If he does so, the burden shifts to TDI to demonstrate a legitimate non-discriminatory reason for the adverse employment action. *Id*. If TDI makes this showing, Mr. Shaw must then present evidence that the proffered reason for his termination is pretextual. *Id*.

The district court determined that Mr. Shaw had made his prima facie case with respect to his Title VII and § 1981 wrongful termination claims, and that defendant had stated a legitimate non-discriminatory reason for the termination (a verbal dispute with a customer). The court determined, however, that Mr. Shaw had failed to carry his burden of showing that the reason for his termination was pretextual. On appeal, Mr. Shaw argues he presented sufficient evidence to create a genuine dispute of material fact as to whether TDI's proffered reason for his termination was pretextual or unworthy of belief. Viewing the evidence in the light most favorable to Mr. Shaw, we agree.

A plaintiff may show pretext "by providing evidence that he was treated differently from other similarly-situated, nonprotected employees who violated

---

[4]     *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

work rules of comparable seriousness." *Kendrick*, 220 F.3d at 1232. Mr. Shaw produced evidence that he was treated differently from Mr. Overbey, a similarly situated, nonprotected employee who violated a work rule of comparable seriousness. This evidence is sufficient to create a disputed issue of fact as to whether the reason for his termination was pretextual.

Mr. Shaw submitted deposition testimony from Mr. Overbey about a verbal dispute Mr. Overbey had with another TDI customer, Mr. McDuffy, on the same day as the verbal dispute between Mr. Shaw and Mr. Ammons. Mr. Overbey and Mr. Shaw are both concrete drivers who were managed by the same supervisor, Mickey Coster. Mr. Shaw is African American and Mr. Overbey is Caucasian. On September 23, 2008, they both had problems at their respective work sites related to concrete spilling from their trucks. Mr. McDuffy and Mr. Ammons were upset about the spills and complained to Mr. Overbey and Mr. Shaw, respectively, in a verbally abusive manner. Both drivers ultimately responded to the customers by "cussing" at them. *See* Aplt. App., Vol. 1 at 67; *id*., Vol. 2 at 209. Mr. Shaw was terminated on September 26, 2008, after Mr. Coster investigated the incident with Mr. Ammons. Mr. Overbey, who testified that Mr. Coster was present during his altercation with Mr. McDuffy, received no discipline after that incident.

During oral argument on its summary judgment motion, counsel for TDI argued that the Overbey/McDuffy incident was distinguishable from the

Shaw/Ammons incident because Mr. McDuffy never complained to TDI about Mr. Overbey, but Mr. Ammons called TDI to complain about Mr. Shaw.  In granting summary judgment in favor of TDI, the court agreed with TDI's position that the Overbey incident was distinguishable because there was no customer complaint.

Mr. Shaw argues on appeal that, viewing the evidence in the light most favorable to him, there was no reason for Mr. McDuffy to call and complain directly to TDI because Mr. Coster, the supervisor, was present during the dispute and was aware of Mr. McDuffy's unhappiness with Mr. Overbey's performance and the verbal sparring between the two parties.  Mr. Overbey was asked specifically about what was said in front of Mr. Coster and he testified:

> McDuffy told me, he said, that's it, mother fucker, he said, I'm going back to using Rainbow, which is another concrete company, and I told him I wished he would, that nobody was going to miss him.  And then he turned around to Mickey and started telling Mickey, he said -- he told Mickey he said, why do you have this mother fucker training someone, he's the one who needs training, you know, he spilled this on the ground.  That's when Mickey finally said get out of here.  I told him, I said, you call me that again, that's it.  It's on. That's when Mickey told me to get in the truck and get out of there.

*Id*. at 214.  Given Mr. Coster's position as a supervisor and Mr. Overbey's testimony that Mr. Coster was present at the McDuffy incident, the company could be deemed to have received a complaint about Mr. Overbey.  As a result, the customer complaint distinction would not support the disparate treatment of Mr. Overbey and Mr. Shaw for essentially the same conduct.  "[E]vidence of less

severe discipline for other employees that are not members of the same protected group who violated work rules of comparable seriousness can establish pretext." *Piercy v. Maketa*, 480 F.3d 1192, 1202 (10th Cir. 2007). Mr. Shaw has presented sufficient evidence of pretext to survive summary judgment on his Title VII and § 1981 wrongful termination claims.

C.

The *McDonnell Douglas* burden-shifting analysis also applies to retaliation claims. *See*, *e.g.*, *Piercy*, 480 F.3d at 1198. The district court assumed that Mr. Shaw had made out a prima facie case but determined, as with the Title VII and § 1981 claims, that TDI had stated a legitimate non-discriminatory reason for the termination and Mr. Shaw had not shown that the stated reason was pretextual.

On appeal, TDI first argues that Mr. Shaw failed to establish a prima facie case of retaliation, which requires showing "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action," *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006) (internal quotation marks omitted). TDI asserts that Mr. Shaw failed to engage in protected opposition to discrimination or to show a causal connection between any alleged opposition and his termination. We disagree.

Mr. Shaw argues that he engaged in protected activity on two separate occasions, first by complaining to Mr. Coster about racially offensive text messages and then by complaining to him about being skipped in the scheduling rotation. TDI responds that Mr. Shaw may have complained about scheduling issues to his supervisor but that he never complained that he thought the scheduling issues were racially motivated. As a result, TDI contends, the scheduling complaint cannot be considered protected opposition to discrimination. TDI also argues that Mr. Shaw was "vague" about whether he actually complained about the text messages, and other testimony indicates he was not shown the text messages until after his termination. Aplee Br. at 25.

We agree with TDI's contention on the scheduling complaint, but we disagree with TDI's characterization of the text-message complaint. Mr. Shaw testified that Mr. Overbey showed him the text messages while he was still employed at TDI. *See* Aplt. App., Vol. 2 at 200. He also testified that he complained to Mr. Coster on September 16, 2008, about the racially offensive text messages. *See* Aplt. App., Vol. 2 at 200. In addition, he submitted a written statement dated October 2, 2008, in which he stated: "On 9-16-08, I informed my immediate supervisor ([Mr. Coster]) that there [were] racial text messages being sent from some of the supervisors and that I had been offended by them and wanted to know how he was going to handle the situation." *Id*. at 218. Although Mr. Overbey testified he did not show Mr. Coster the text messages until after

-10-

Mr. Shaw's termination, we view the evidence in the light most favorable to Mr. Shaw. At the summary judgment stage, Mr. Shaw's testimony is sufficient to show that he engaged in protected opposition to discrimination for the purposes of establishing his prima facie case of retaliation.

Next, TDI argues that temporal proximity alone is not enough to show causation. But in this case, where the termination occurred only ten days after the protected activity, on September 26, 2008, temporal proximity is enough to show causation for the purposes of establishing Mr. Shaw's prima facie case. *See Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008) (holding that close temporal proximity of two weeks between protected activity and termination was "alone sufficient to establish a causal connection"); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (holding that close temporal proximity of twenty-four days between plaintiff's complaint and his termination was sufficient to establish a causal connection). Mr. Shaw produced enough evidence to establish a prima facie case of retaliation.

Because Mr. Shaw established a prima facie case of retaliation, we next consider TDI's legitimate non-discriminatory reason for the termination, and Mr. Shaw's evidence of pretext. As we discussed above in the pretext analysis of the Title VII and § 1981 claims, Mr. Shaw has presented evidence that creates a factual dispute as to whether the proffered reason for his termination was pretextual. Summary judgment on his retaliation claim is therefore inappropriate.

-11-

II.

We affirm the district court's decision granting summary judgment in favor of TDI on Mr. Shaw's hostile work environment claim. We REVERSE the district court's decision granting summary judgment in favor of TDI on Mr. Shaw's Title VII and § 1981 claims for wrongful termination and retaliation, and we REMAND for further proceedings consistent with this order and judgment.

Entered for the Court


Michael R. Murphy
Circuit Judge