FILED
United States Court of Appeals
Tenth Circuit

March 23, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ROCKY WALKER; KRISTI
WALKER,

        Plaintiffs-Appellants,

v.

PROGRESSIVE DIRECT
INSURANCE COMPANY,

        Defendant-Appellee.

No. 11-5122
(D.C. No. 4:09-CV-00556-TCK-PJC)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **McKAY**, and **GORSUCH**, Circuit Judges.

---

Plaintiffs Rocky and Kristi Walker appeal from the district court's

decisions granting summary judgment in favor of defendant Progressive Direct

Insurance Company and denying the Walkers' motion to alter or amend the

judgment. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The Walkers were covered by a Progressive insurance policy for their 2003 Chevrolet Tahoe. On July 29, 2008, Ms. Walker called Progressive to report that their vehicle had been stolen while they were out of town on vacation. The vehicle was recovered, but it had been burned and suffered damage. On August 22, Progressive decided to refer the claim to its Special Investigations Unit ("SIU") because: (1) the vehicle was for sale at the time of the loss, (2) the column was not compromised, (3) the vehicle was a "gas guzzler"; and (4) both sets of keys were in the Walkers' possession at the time of loss. Aplt. App., Vol. 2 at 566. An expert for Progressive testified that these factors are "generally recognized indicators of insurance fraud." *Id*., Vol. 1 at 471. On August 25, Progressive notified the Walkers that there were certain coverage issues with their claim and that it was being investigated by the SIU.

On September 9, Progressive requested that the Walkers provide them with a key for inspection and copies of vacation photographs to prove that they were out of town when the theft occurred. As of September 16, Progressive had not received the requested items so it again asked the Walkers to provide them. On September 25, Progressive received copies of the vacation photos and a key. Upon review of the photos, it appeared as though the photos had been altered.

On October 7, Progressive's claim file notes that a "possible issue surfaced with the keys." *Id*. at 296. The Walkers' stated that they had only two keys to

the vehicle and had both keys in their possession at the time of the theft, but a Progressive employee discovered the existence of a third key. On that same day, a Progressive employee left a voicemail message for Ms. Walker asking for a call back, requesting receipts and further documentation from their vacation, advising her that the vacation photos did not seem to be original photos, and informing her that Progressive would like to speak with the other parties who accompanied the Walkers on vacation. Progressive did not hear back from Ms. Walker. On October 16, Progressive sent a letter to the Walkers by regular and certified mail following up on its request for receipts from the Walkers' vacation.

On November 3, Mr. Walker contacted Progressive by email, stating that no one had contacted them in over a month about their car. On that same day, Doug Mallory, a Progressive employee, spoke with Ms. Walker and she denied receiving the October 16 letter. Mr. Mallory asked about the vacation photos and Ms. Walker explained that the photos were taken with a blank background and then they could select a background of their choice. She provided a website so that Mr. Mallory could review the photos. Mr. Mallory did review the photos and confirmed the pictures and dates matched what Ms. Walker had submitted to Progressive.

Progressive's claim file notes that the origin of the third key remained unresolved as of November 3. The next day, however, the claim file notes that Progressive had authorized coverage for the loss and that the documentation had

shown the Walkers were not in town on the date of loss. On November 17, Progressive notified the Walkers that it had completed its coverage review, had resolved the coverage issue, and would be providing coverage for their loss.

On June 12, 2009, the Walkers brought suit in state court asserting that Progressive acted in bad faith in the handling of their insurance claim. Progressive removed the action to federal court and then moved for summary judgment. The district court granted summary judgment in Progressive's favor. The Walkers filed a motion for a new trial, which the district court construed as a motion to alter or amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. The district court denied the motion. The Walkers now appeal.

II.

To establish a bad-faith claim, the Walkers must show, among other things, that Progressive's actions were unreasonable under the circumstances and that Progressive failed to deal fairly and act in good faith in the handling of the Walkers' claim. *See Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005). When considering a motion for summary judgment on a bad-faith claim under Oklahoma law, a district court "must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1336-37 (10th Cir. 1993). "Until the facts, when construed most favorably

-4-

against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed." *Id*. at 1437.

In Progressive's motion for summary judgment, it argued that the Walkers' had failed to offer any evidence showing that its actions were unreasonable or taken in bad faith. In response to Progressive's motion for summary judgment, the Walkers explained that "[t]he grounds on which [Progressive] has breached its duty of good faith and fair dealing . . . concern the focus and method of [Progressive's] investigation, not any alleged disagreement concerning the value of the loss or whether [Progressive] had a right to investigate whether [the Walkers] were involved in the theft." Aplt. App., Vol. 2 at 552. They alleged that Progressive conducted an untimely and improper investigation based on Progressive's handling of two issues--the existence of the third key to their car and the authenticity of the vacation photos. Specifically, the Walkers argued that Progressive's actions were unreasonable because "[i]t was knowable to the insurance company that the pictures were valid and that the third key was created after the loss." *Id*. at 558. The Walkers also complained that Progressive "allowed the 'key' issue to be presented to its expert, Barry Zalma, who used that to accuse the [Walkers] of fraud in his 2/25/10 expert report." *Id*. at 553.

After considering the parties' submissions, the district court concluded that the Walkers could not defeat Progressive's motion for summary judgment because

they had failed to explain how they were damaged by Progressive's alleged unreasonable actions, which is a required element of a bad faith claim, and they had further failed to show that Progressive's investigation was unreasonable. As the court explained, "although Progressive did not immediately call Dixie Stampede [, where the photos were reportedly taken,] to confirm the legitimacy of the Branson photographs, as [the Walkers] contend should have occurred, Progressive determined the validity of the pictures by other means." *Id*. at 705. With respect to the third-key issue, the district court stated that the Walkers' "reliance on Zalma's use of the third key in his expert report is misplaced, as this report was prepared in the course of this litigation and was not part of Progressive's investigation, making it inapplicable to [the Walkers'] bad faith claim." *Id*. Finally, the court explained that although it "might have been preferable for Progressive to determine the origin of the third key prior" to the deposition of one the repair shop employees who testified that he created the key himself, "an insurer's investigation need only be reasonable, not perfect." *Id*. (quotations omitted).

### III.

We review de novo the grant of summary judgment, applying the same standard as the district court. *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1246 (10th Cir. 2010). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

-6-

of law." Fed. R. Civ. P. 56(a). We review for abuse of discretion the district court's denial of a Rule 59(e) motion. *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997).

On appeal, the Walkers argue that the district court erred in granting summary judgment because (1) Progressive did not meet its initial burden of proof; (2) there were jury questions as to Progressive's investigation; (3) Progressive's post-litigation conduct was a continuation of its improper investigation; and (4) there was a genuine issue as to the Walkers' damages. The Walkers further argue that the district court abused its discretion in denying their Rule 59(e) motion.

The federal rules require that an appellant support the arguments in its opening brief "with citations to the authorities and parts of the record on which the appellant relies," Fed. R. App. P. 28(a)(9)(A), and "[i]t is well-settled that arguments inadequately briefed in the opening brief are waived," *United States v. Cooper*, 654 F.3d 1104, 1128 (10th Cir. 2011) (quotation omitted). Progressive contends that "[t]he Walkers' Opening Brief consists almost entirely of conclusory assertions, unsupported by citations to case law and/or the district court record." Aplee. Br. at 17. Progressive further contends that the Walkers have waived some of their arguments due to inadequate briefing. We agree with both contentions.

The Walkers' brief contains a meager five pages of argument; there are no citations to the district court record in any of the argument sections and many of the assertions are conclusory and fail to sufficiently explain how the district court erred. For example, the Walkers present one paragraph to support their first issue in which they contend that Progressive did not meet its "initial burden of proof" and did "not address the undisputed material facts set forth by Plaintiff." Aplt. Br. at 8. Other than a passing reference to Fed. R. Civ. P. 56, the Walkers offer no legal authority for their argument and no citations to the record to demonstrate how Progressive failed to address their undisputed material facts. *Id.*

Next, the Walkers assert that there are jury questions regarding Progressive's investigation, but the bulk of this argument section is a string of case citations with no explanation of how the cited cases demonstrate error in light of the facts of their own case. *See id.* at 9-10. Near the conclusion of this section, the Walkers do state that "one of the facts not investigated by PROGRESSIVE was the storage fee." *Id.* at 10. But even this statement is not supported by a citation to the record. *See id.* The lack of record citation may be due to the fact that the Walkers did not raise this issue in their response to summary judgment. The Walkers' bad-faith claim was based on Progressive's handling of the existence of the third key and its position that the vacation photos were not originals. *See* Aplt. App., Vol. 2 at 553, 557-558. They did not argue that any failure by Progressive to investigate a storage fee constituted bad faith.

*See id.* at 552-558. Failing to raise an argument with the district court provides another basis for waiver. *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1190 (10th Cir. 2007).

Finally, the Walkers present a mere two sentences in support of their claim that the district court abused its discretion in denying their Rule 59(e) motion. They state: "The District Court's Order granting summary judgment was, as a matter of law, adverse to the cause of bad faith of the State of Oklahoma. *See McCorkle v. Great Atlantic Ins. Co.*, 1981 OK 128, 637 P.2d 503 (Reasonableness is a jury question). As such, there was clear error on the need to prevent manifest injustice." Aplt. Br. at 12. The Walkers have not adequately explained or developed this issue. "Perfunctory complaints that fail to frame and develop an issue are not sufficient to invoke appellate review." *Femedeer v. Haun*, 227 F.3d 1244, 1255 (10th Cir. 2000) (quotation omitted).

For the foregoing reasons, we conclude that the Walkers have waived their first, second and fifth issues due to inadequate briefing and/or failing to raise them with the district court in the first instance.

In their third issue, the Walkers complain that Progressive's post-litigation conduct was a continuation of its improper investigation and that the district court failed to properly consider this issue. They argue that it was twenty months before Progressive determined the origin of the third key and that Progressive's expert accused them of felony insurance fraud in his expert report. This argument

has no relevance to the Walkers' bad-faith claim. The fact that the origin of the key was not determined until March 2010 did not impact the timeliness or the reasonableness of the investigation into the Walkers' claim. Once Progressive verified that the Walkers were out of town during the date of loss, it authorized coverage for the claim, even though the origin of the third key remained unresolved. We therefore agree with Progressive that "it was irrelevant when Progressive determined the origin of the third key because Progressive agreed to pay for the repairs to The Vehicle in November 2008." Aplee. Br. at 31. Likewise, we agree with the district court that the expert report prepared for the litigation in February 2010 is inapplicable to the Walkers' bad-faith claim, which was based on Progressive's investigation from the date the claim was submitted on July 29, 2008, until coverage was authorized on November 17, 2008.

In their fourth issue, the Walkers contend that there is a genuine issue as to their damages. We need not reach this issue, however, because we agree with the district court's alternate holding that the Walkers failed to show that Progressive's handling of the vacation photos or the third-key issue was unreasonable or rose to the level of bad faith.

IV.

We AFFIRM the district court's judgment.

Entered for the Court

Monroe G. McKay<br>Circuit Judge

-10-